132 F.3d 39
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sol KEST, Plaintiff/Cross-Complainant/Appellant,
v.
Michael KEST, Kest Investment Company, a California General
Partnership, Defendants/Cross-Complainants/Appellants,
v.
JR PROPERTIES, a California Corporation, Defendant,
and
LAWYERS TITLE INSURANCE CORPORATION; Continental Lawyers
Title Company; Continental Land Title Company;
Commonwealth Land Title Company, etc., et al.; Colony
Management, Inc., a Delaware corporation, d/b/a in
California as Colony Advisors, Inc.; Federal Deposit
Insurance Corporation, as Receiver/Conservator for Homefed
Bank, FSB/FA, Cross-Defendants/Appellees.
 No. 96-55861.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1997.
Dec. 10, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California Dickran Tevrizian, District Judge, Presiding
 
 
 2
 Before REINHARDT and TASHIMA, Circuit Judges, and SHADUR, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Sol Kest ("S.Kest"), his son Michael Kest ("M.Kest") and Kest Investment Company ("KIC") (collectively "Kests") appeal the district court's order dismissing, under Fed.R.Civ.P. ("Rule") 12(b)(6), their cross-complaints seeking equitable indemnification and other relief from various parties[1] for damages arising from Kests' alleged fraudulent concealment of a real estate trust deed. We affirm.
 
 Standard of Review
 
 5
 We review de novo a district court's Rule 12(b)(6) dismissal of an action (Terracom v. Valley Nat'l Bank, 49 F.3d 555, 558 (9th Cir.1995)). Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) explains the test for a complaint's viability:
 
 
 6
 A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.
 
 
 7
 Familiar Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations in Kests' crosscomplaints (Terracom, 49 F.3d at 558).
 
 Equitable Indemnification
 
 8
 Kests contend that the district court improperly granted the with-prejudice dismissal of their equitable indemnification claims on the ground that an alleged intentional tortfeasor cannot obtain indemnity from a third party who has not committed an intentional tort. That holding, when applied to a situation where the party seeking indemnification has engaged in conduct materially more egregious than that of the putative indemnitor, is consistent with Ninth Circuit precedent, with California statutory and case law and with sound public policy.
 
 
 9
 We have consistently held (applying California law) that there is no right of indemnification for intentional torts such as fraud (e.g., Riverhead Sav. Bank v. National Mortgage Equity Corp., 893 F.2d 1109, 1116 (9th Cir.1990)). Similarly, Cal.Civ.Proc.Code § 875(d) (West 1997) provides:
 
 
 10
 There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person.
 
 
 11
 Though we recognize that the quoted statute does not apply here directly because its language expressly addresses actions for contribution, not those for indemnification, Kests go further to argue that the provision should go entirely unheeded for that reason. That myopic view fails to recognize that indemnification, rather than being a dissimilar doctrine, is simply the ultimate form of contribution (see American Motorcycle Ass'n v. Superior Court, 146 Cal.Rptr. 182, 190 (Cal.1978)).
 
 
 12
 Most importantly, California case law (which controls in this diversity case under Erie v. Tompkins principles) supports dismissal. Because the California Supreme Court has not issued a recent definitive ruling on the indemnification question, familiar Erie doctrine teaches that the federal courts' function is to predict how that court would resolve the issue presented here (Vernon v. City of Los Angeles, 27 F.3d 1385, 1391 (9th Cir.1994)).
 
 
 13
 In that respect the district court rejected the pronouncement in Baird v. Jones, 27 Cal.Rptr.2d 232, 234 (Cal.Ct.App.1993) that an intentional tortfeasor may seek equitable indemnification from a concurrent intentional tortfeasor, a decision that appears at odds with a good deal of California precedent. But we need not--and do not--adopt the district court's stance here. Instead we find that Baird, even if accepted as an accurate predictor of California Supreme Court doctrine, is inapposite here for two critical reasons.
 
 
 14
 For one thing, Baird limited its holding to situations where the intentional tortfeasors are concurrent in the sense that they participate in a joint tortious plan (in that case, a plan to sell real property through misrepresentations). In sharp contrast, the present case does not involve "concurrent" intentional tortfeasors. Kests proffer no evidence of an agreement, either explicit or tacit, to defraud WCLF that could arguably constitute the requisite concurrence.
 
 
 15
 Of even greater import, Baird stressed as a predicate for its decision allowing equitable indemnification to the plaintiff there that his conduct, though intentional, was "fairly innocuous" (Baird, 27 Cal.Rptr.2d at 238) relative to his indemnitor's "more egregious" behavior (id. at 233). But this case involves the direct converse of that situation. No occasion for contribution can arise here to begin with unless Kests are actually found at trial to have committed an active fraud, as is charged in the complaint. And even when Kests' cross-complaints are liberally construed, they have made no comparable allegations (with or without the particularity required by Rule 9(b)) that charge fraud on the part of the cross-defendants. At worst the "intentional" conduct that Kests ascribe to cross-defendants rises (or falls) to the level of negligent misrepresentation.
 
 
 16
 Baird, id. at 236 n. 4 itself questions whether an intentional tortfeasor may shift its burden to a negligent tortfeasor. And the uniform line of pre-Baird California decisions had rejected the availability of indemnification to intentional tortfeasors in such circumstances (see our characterization of California law in Stewart v. American Int'l Oil & Gas Co., 845 F.2d 196, 200 (9th Cir.1988)). We therefore decline to extend the Baird holding to the situation posed here (an extension that we consider the Baird court would not itself make). Because Kests' alleged primary conduct is of a substantially greater order of culpability than the lesser or secondary form of conduct that they ascribe to cross-defendants here, indemnification is unavailable to Kests.
 
 Judicial Estoppel
 
 17
 Because the principal action against Kests remains viable, we address one necessary consequence of our just-announced holding. "The doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation" (Masayesva v. Hale 118 F.3d 1371, 1382 (9th Cir.1997)). "It is an equitable doctrine intended to protect the integrity of the judiciary process by preventing a litigant from 'playing fast and loose with the courts' " (Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.1997), quoting in part Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)). Because in declining to extend Baird we have accepted WOLF's stated position that Kests fraudulently concealed a trust deed, WCLF is judicially estopped from taking a position later in this litigation that would be inconsistent with its assertions of intentional fraud.
 
 
 18
 Our dissenting colleague expresses concern at our having thus addressed the judicial estoppel doctrine prospectively. But that is occasioned by the unusual posture presented by this appeal, in which the motion to dismiss relates not to a claim but to a cross-claim. In the usual situation, where a motion to dismiss a complaint is at issue, the finality or lack of finality of a ruling granting such a motion is a function of whether the litigant has or has not asked for the opportunity to plead over. If the litigant has not done so, electing instead to stand on the original complaint, a district court (and hence this court on appeal) is entitled to treat the granting of the motion to dismiss as also calling for the dismissal of the claim itself, so that the entire matter has been finally resolved.
 
 
 19
 In this instance, though, the parties whose claims have been dismissed--Kests and their cross-claims--don't have the same degree of control as a plaintiff who has been subjected to dismissal of his or her complaint. Kests (and we on appeal) must take the case on the record as it is now presented, which involves claims against Kests of active fraud on their part. We have perforce relied on the legal nature of those claims in affirming the dismissal of the cross-complaints. And because Kests' adversaries (and not Kests) have control over the future of this litigation, we view our judicial reliance as posing a classic instance for the inclusion of this caveat as to judicial estoppel (a doctrine for which such judicial reliance is the critical component).
 
 
 20
 Standing To Assert Claims on Behalf of Partnership
 
 
 21
 M. Kest and KIC further contest the district court's holding that they lack standing to assert certain of their claims that, by their own admission and from the facts alleged, belong to another party. They argue that such standing exists in light of the fact that the named plaintiffs in the underlying case are both JR Properties, a general partnership comprising M. Kest, KIC and S. Kest's other children, and the individual partners. We need not resolve that dispute, for the M. Kest and KIC equitable indemnification claims must also fail in any event for the reason stated in the Equitable Indemnification section.
 
 Disposition of State Law Claims
 
 22
 Kests seek review of the district court's dismissal with prejudice of the substantively identical claims for equitable indemnification that they advanced against all of the crossdefendants.[2] Kests contend that the lower court should instead have adjudicated the indemnification claim only against FDIC and then remanded the identical claims against the remaining parties. As confirmed by Supreme Court and Ninth Circuit precedent, the district court is vested with broad discretion either to adjudicate or to remand supplemental state claims (CarneqieMellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Schneider v. TRW, Inc., 938 F.2d 986, 993-94 (9th Cir.1991)). Because various factors, such as judicial economy and the avoidance of multiplicity of litigation and of time delays, reasonably support the lower court's decision to dispose of the identical issue of equitable indemnification as to all of the parties, that exercise of discretion is not abusive and surely does not call for reversal.
 
 
 23
 Denial of Opportunity To Amend Cross-Complaint
 
 
 24
 This Court gives strict scrutiny to the decision of the district court in denying Kests leave to amend their crossComplaints (Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), amended in another respect at 856 F.2d 111 (9th Cir.1988)). Rule 15(a) prescribes that in general leave to amend should be freely granted. But that general proposition is subject to the limitation that if an action is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "leave to amend may be denied ... if amendment of the complaint would be futile" (Albrecht, 845 F.2d at 195). Amendment is viewed as futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense" (Miller v. Rykoff-Sexton Inc., 845 F.2d 209, 214 (9th Cir.1983)).
 
 
 25
 Under those standards it is clear that the district court properly denied Kests leave to amend. Pursuant to California law, an alleged intentional tortfeasor cannot obtain equitable indemnification from a third party whose asserted conduct is of a materially lesser order of culpability. Because Kests thus cannot repair their claims for equitable indemnification, any proposed amendment of their cross-complaints would be futile. ci Conclusion
 
 
 26
 There was no error in the various aspects of the district's court's order now on appeal. We AFFIRM.
 
 
 27
 TASHIMA, Circuit Judge, concurring, in part, and dissenting, in part:
 
 
 28
 I concur in all of the majority's Memorandum disposition, except the section dealing with judicial estoppel, from which I respectfully dissent.
 
 
 29
 The majority, in an unprecedented undertaking, applies the doctrine of judicial estoppel prospectively, on a run-of-the-mill 12(b)(6) motion, to bar a future claim--a claim that has not been been made and may never be made. It does so without the citation of any authority sanctioning such a practice.
 
 
 30
 Heretofore, we have applied judicial estoppel prospectively only in the limited area of environmental claims under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332. We have justified prospective application there because what was at issue was the sufficiency of an environmental impact statement (EIS) and it was appropriate to bind the federal agency to what essentially were promises made in the EIS, e.g., regarding future mitigation measures. See Northern Alaska Envtl. Ctr. v. Lulan, 961 F.2d 886, 891 (9th Cir.1992); see also Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1357-58 (9th Cir.1994). I know of no case applying judicial estoppel prospectively outside of the context of a NEPA claim.
 
 
 31
 The absence of such cases is perfectly understandable. The purpose of the doctrine, as the majority acknowledges, is to prevent a litigant from "playing fast and loose with the courts" by taking inconsistent positions. And there is no occasion to contemplate invoking the doctrine until a litigant attempts to take inconsistent positions--something which has not happened in this case.
 
 
 32
 Inconsistency of positions, however, is only a threshold requirement, for the doctrine is one of discretion. See Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993). Because the court in which the inconsistent position is taken will be in a much better position to judge, as a matter of its discretion considering all of the then existing circumstances, whether that inconsistency is abusive or otherwise threatens the "integrity of the judicial process," Helfand v. Gerson, 105 F.3d 530, 535 (9th Cir.1997), I believe it is an unsound practice for an appellate court to rule on the question sua sponte in the abstract and to do so, necessarily, without knowledge of the circumstances under which the inconsistent position might be taken.
 
 
 33
 The majority justifies the application of judicial estoppel here because of our reliance "on the nature of those claims in affirming the dismissal of the cross-complaints." Every time a court-ules on a 12(b)(6) motion, however, it relies on the nature of the claims asserted. That is the essence of a 12(b)(6) motion, to test the legal sufficiency of the allegations, accepting them as true. The majority has not shown how our "reliance" on the pleadings in this case is any greater than reliance on the pleadings in any other case on a 12(b)(6) motion. It is mistaken to apply judicial estoppel, especially prospectively, in a 12(b)(6) situation which is meant only to test the sufficiency of the pleadings. See Wright & Miller, Federal Practice and Procedure, § 4477 at 786 (1995) ("Inconsistent position doctrine must not be allowed to interfere with the modern pleading rules that expressly permit pursuit of inconsistent positions within a single action.").
 
 
 34
 I therefore dissent from the majority's prospective invocation of the doctrine of judicial estoppel. Because, however, the majority's discussion of judicial estoppel does not affect the disposition, I concur in the judgment.
 
 
 
 **
 The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Kests' cross-complaint targets are West Coast Land Fund ("WCLF"), Continental Lawyers Title Company, Continental Land Title Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company and Federal Deposit Insurance Corporation ("FDIC")
 
 
 [2]
 Other state law tort claims were dismissed without prejudice and remanded to state court